UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS PEREZ,<br><br>Plaintiff,<br><br>v.<br><br>OSCAR BECERRA, et al,<br><br>Defendants. | Case No. 1:26-cv-01552-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S FIRST AMENDED COMPLAINT BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 7)<br><br>THIRTY (30) DAY DEADLINE<br><br>ORDER TO ASSIGN A DISTRICT JUDGE AND TERMINATE E. MARTIN AS DEFENDANT ON THE DOCKET |

Plaintiff Luis Perez is proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.[1] Plaintiff filed the complaint commencing this action on February 24, 2026 (ECF No. 1), which largely consisted of a chronology of interactions with various medical professionals about Plaintiff's many different medical conditions and requests spanning over two and a half years.

On May 13, 2026, the Court screened the complaint and concluded that Plaintiff failed to state any cognizable claims. (ECF No. 6). The Court gave Plaintiff thirty days to file a first amended complaint or to notify the Court that he wanted to stand on his complaint. (*Id.* at 9).

\\\

[1] Plaintiff paid the filing fee on March 17, 2026.

On June 18, 2026, Plaintiff filed a First Amended Complaint. (ECF No. 7). Plaintiff re-asserts his claim of deliberate indifference to serious medical needs related to pain in his left leg, along with claims for failure to approve requests for accommodation in violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"). (*Id.*).

The Court has screened Plaintiff's First Amended Complaint and finds that it fails to state any cognizable claims. For the reasons that follow, the Court recommends that this case be dismissed with prejudice. Plaintiff has thirty days from the date of this order to file objections to these findings and recommendations.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking "redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

## II. SUMMARY OF PLAINTIFF'S AMENDED COMPLAINT[2]

Plaintiff is a 35-year old inmate currently housed at Corcoran State Prison ("CSP") in Corcoran, California. Plaintiff alleges the underlying events occurred at CSP and names several CSP employees as defendants in their "official capacity," including Oscar Becerra, registered nurse; Pierrette Lenoir, physician and surgeon; R. Gill, medical doctor; Edwin Hojilla, Chief Physician and Surgeon; and B. McKinney, ADA Coordinator. (ECF No. 7 at 1-3).[3]

In his amended complaint, Plaintiff alleges that, in February of 2025, he injured his left leg while engaged in recreational activity, and he was examined by on-site emergency, medical

---

[2] For readability, minor alterations, like changing capitalization, have been made to some of Plaintiff's quotations without indicating each change.

[3] In his initial complaint, Plaintiff named E. Martin as a defendant. (ECF No. 1). However, in his amended complaint, Plaintiff does not name or assert any claims against Defendant Martin. (ECF No. 7).

personnel. (*Id.* at 3-4). Medical personnel made "no medical diagnosis," and referred him to Dr. Lenoir, his primary care provider. (*Id.* at 4).

After submitting a medical request, Dr. Lenoir examined Plaintiff on February 28, 2025, and she attributed the injury to a pre-existing bone spur in his left foot. (*Id.*). Dr. Lenoir did not order Plaintiff to undergo an MRI. (*Id.*).

Plaintiff submitted two additional medical requests for pain in his left foot and leg. Plaintiff was seen by Nurse Becerra who "refus[ed] to summon prompt and adequate medical aid" and who followed Dr. Lenoir's order not to provide reasonable accommodation of a temporary medical mobility assistance device. (*Id.*).

On April 1, 2025, Plaintiff submitted a reasonable accommodation request form to CSP's ADA Reasonable Accommodation Panel ("RAP"), complaining of left foot pain and requesting an accommodation of lower-bunk/lower-tier designation. (*Id.* at 9). At a RAP meeting, Dr. McKinney and Dr. Hojilla denied Plaintiff's request for an ADA designation and a lower bunk/lower tier re-assignment, citing Plaintiff's negative February 28, 2025 assessment by Dr. Lenoir. (*Id.*).

Also in April 2025, Plaintiff submitted additional medical requests regarding his left foot and leg and saw Nurse Becerra and Dr. Lenoir by video. (*Id.* at 5). Dr. Lenoir stated: "Oh, you're perfectly fine!" (*Id.*). Nurse Becerra and Dr. Lenoir prescribed acetaminophen tablets and lidocaine patches for pain but refused to provide temporary reasonable accommodation of an unspecified medical mobility device. (*Id.*).

On May 6, 2025, Plaintiff went "medically 'man down'" and emergency transport took him to CTC,[4] where he was seen by Dr. Gill, who diagnosed a ruptured Achilles heel in Plaintiff's left foot. (*Id.* at 6). Dr. Gill prescribed Levaquin (an antibiotic[5]) but refused to

---

[4] "CTC" is a Correctional Treatment Center, which "is a health facility with a specified number of beds within a state prison…designated to provide health care to that portion of the inmate population who do not require general acute care level of services but are in need of professionally supervised health care beyond that normally provided in the community on an outpatient basis. Cal. Code Regs. Tit. 22, § 79516.

[5] Levaquin is the brand name for levofloxacin, an antibiotic medication that treats bacterial infections. https://my.clevelandclinic.org/health/drugs/20154-levofloxacin-tablets (accessed July 29, 2026).

provide Plaintiff's requested reasonable accommodation for crutches and other medically necessary mobility devices because Plaintiff had to request them through Dr. Lenoir. (*Id.*).

On May 20, 2025, Plaintiff had to be physically assisted to his consult with Nurse Becerra, and Nurse Becerra refused to provide the crutches or other mobility devices, saying that Dr. Lenoir would see him when she had time. (*Id.*).

Later that day, in response to his request for accommodation submitted two days earlier, the RAP issued crutches to Plaintiff, as a temporary accommodation, as well as a lower bunk/lower tier assignment "as a non-medical programmatic measure." (*Id.* at 6, 10). Plaintiff received the crutches but did not get a lower bunk/lower tier cell until September 3, 2025, causing him to sleep on his cell floor. (*Id.* at 7).

In May, June, and August, Plaintiff submitted accommodation requests for: a walker or cane to replace the crutches due to shoulder and back issues; transfer to an ADA-compliant prison; provision of in-cell grab bars; and a wheelchair. (*Id.* at 11). These requests were initially denied because Dr. Lenoir told the RAP that Plaintiff "requires no medical accommodation." (*Id.* (internal quotation marks omitted)).

However, in December of 2025, Plaintiff was temporarily issued a wheelchair as a non-medical/non-ADA mobility device. (*Id.* at 8). The RAP denied Plaintiff permanent, medical ADA designation because Dr. Lenoir said that Plaintiff "has nothing medically wrong with him that would indicate he qualifies for any mobility DMEs [durable medical equipment]." (*Id.* at 11). Plaintiff has been "recently notified" that the wheelchair will be rescinded and "Plaintiff will have to learn to walk again on his own volition." (*Id.* at 8).

Plaintiff alleges that RAP denied reasonable accommodation for permanent ADA mobility restriction and permanent wheelchair designation, because Dr. Lenoir's February 9, 2026 assessment that Plaintiff requires "no medical necessity for DME [durable medical equipment] to assist with ambulation." (*Id.* at 11 (internal quotation marks omitted)).

In addition to suffering pain and mobility restrictions, Plaintiff also alleges that he has suffered a disciplinary violation for his inability to attend assigned prison, educational, and group programs. (*Id.* at 12).

Plaintiff seeks $200,000 in compensatory damages and $10,000 per defendant in punitive damages. (*Id.* at 13). Plaintiff also seeks an order from the Court enjoining CSP officials from taking Plaintiff's mobility devices and "directing CDCR medical officials to order that Plaintiff undergo an independent medical examination of all adequate medically necessary treatment for his current condition." (*Id.*).

**III. ANALYSIS OF PLAINTIFF'S CLAIMS**

**A. Section 1983**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal

connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

**B. Deliberate Indifference to Serious Medical Needs**

"Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted).

A mere difference in medical opinion is "insufficient, as a matter of law, to establish deliberate indifference.'" *Toguchi,* 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at

106; *see also Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013) ("mere indifference, negligence, or medical malpractice" is insufficient, and "[e]ven gross negligence is insufficient to establish deliberate indifference to serious medical needs") (citations and internal quotation marks omitted).

Under these legal standards, Plaintiff's amended complaint fails to state a claim for deliberate indifference to his medical needs against Dr. Lenoir, Dr. Gill, and Nurse Becerra.

Plaintiff's amended complaint generally describes how Plaintiff has disagreed with, and complained about, the medical treatment he has received over a period of a year. However, Plaintiff has not alleged that any Defendant believed that Plaintiff should receive a certain type of treatment, had the ability to provide that treatment, yet purposefully failed to do so. To the contrary, Plaintiff alleges that Dr. Lenoir believed nothing was wrong with Plaintiff apart from a flare up of a pre-existing bone spur, and therefore, Plaintiff was not in need of a medical assistive devices. Moreover, she provided Plaintiff with oral and topical pain relief medication. While Plaintiff disagrees with Dr. Lenoir's diagnosis, he has failed to allege facts indicating that Dr. Lenoir purposefully failed to address Plaintiff's medical needs. As explained above, a difference of opinion regarding the appropriate medical treatment, or even negligence regarding that medical treatment, fails to state a cognizable claim for deliberate indifference to serious medical needs. *Toguchi,* 391 F.3d at 1058.

As for Nurse Becerra, Plaintiff alleges that Nurse Becerra chuckled when Dr. Lenoir said that there was nothing wrong with Plaintiff and argues this is medical indifference. However, Plaintiff does not identify any treatment or aid Nurse Becerra knew Plaintiff needed and refused to provide.

As for Dr. Gill, who treated Plaintiff one time at CTC, Plaintiff argues that Dr. Gill provided antibiotic medication but told him that Plaintiff would need to follow up with Dr. Lenoir, as his primary care provider, about receiving crutches. Plaintiff does not allege that Dr. Gill had the ability to order crutches for Plaintiff or that he believed Plaintiff needed the crutches and still refused.

Accordingly, Plaintiff fails to state a claim for deliberate indifference to serious medical needs against any Defendant.

**C. ADA and RA**[6]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to inmates within state prisons. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998); *see also Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997); *Duffy v. Riveland*, 98 F.3d 447, 453-56 (9th Cir. 1996). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Under the ADA and RA, the "failure to provide reasonable accommodation can constitute discrimination." *Weldeyohannes v. Washington*, 162 F.4th 972, 976 (9th Cir. 2025) (internal quotation marks omitted) (quoting *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)).

Neither the ADA nor the RA provide a basis to sue government officials in their individual capacities. *Vinson*, 288 F.3d at 1156 (a plaintiff cannot sue state officials in their individual capacities to vindicate rights created by Title II of the ADA or Section 504 of the Rehabilitation Act); *Burgess v. Carmichael*, 37 F. App'x 288, 292 (9th Cir. 2002) ("Plaintiffs may sue only a 'public entity' for [ADA] violations, not government officials in their individual capacities"); *Rines v. Riverside Cty. Jails Sheriffs*, 2019 WL 6916005, at *11 (C.D. Cal. Oct. 7, 2019) ("a plaintiff cannot sue an official in his or her individual capacity under the ADA….").

---

[6] The Court analyzes Plaintiff's ADA and RA claims together because they do not differ here in any relevant way and because Title II of the ADA was modeled after Section 504 of the RA. *Weldeyohannes v. Washington*, 162 F.4th 972, 976 (9th Cir. 2025); *see also Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135–36 (9th Cir. 2001).

"To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (citing *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir.1998)). Additionally, deliberate indifference is the appropriate standard to use in determining whether intentional discrimination occurred. *Id.* "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139. "[I]n order to meet the second element of the deliberate indifference test, a failure to act must be the result of conduct that is more than negligent and involves an element of deliberateness." *Id.* at 1139.

Here, Plaintiff sues Drs. Hojilla, McKinney, and Lenoir for violation of the ADA and RA and alleges that they improperly denied him access to durable medical equipment. As for Dr. Lenoir, Plaintiff has not alleged that Dr. Lenoir knew Plaintiff needed the medical devices and refused to provide them because of his alleged disability. Instead, Plaintiff alleges that Dr. Lenoir believed that he was "perfectly fine" and did not need the devices.

Accordingly, as described above, Plaintiff has not stated a claim for deliberate indifference as to Dr. Lenoir and therefore has not stated a claim for intentional discrimination in violation of the ADA and RA.

Similarly, Plaintiff has not alleged that Drs. Hojilla or McKinney knew that Plaintiff needed the requested medical devices and refused to provide them. Rather, Plaintiff alleges that Drs. Hojilla and McKinney, as members of RAP, considered Plaintiff's requests for crutches, a cane or walker, a wheelchair, and a lower tier/lower bunk assignment, and granted crutches, a lower bunk/lower tier assignment, and a wheelchair as a non-medical accommodation. While Plaintiff argues that it took CSP several months to enact the lower bunk/lower tier assignment, he does not allege that the delay was done intentionally, nor caused by any named defendant.

For those accommodation requests that were denied by RAP, Drs. Hojilla and McKinney first sought a medical response from Dr. Lenoir, as Plaintiff's primary care provider, who indicated that she believed Plaintiff did not require assistive devices. Thus, Plaintiff has

not alleged that Drs. Hojilla and McKinney knew he needed the devices and refused to provide them due to deliberate indifference. Thus, Plaintiff has not stated a claim that Drs. Hojilla and McKinney intentionally discriminated against him.

Accordingly, Plaintiff fails to state a claim against any Defendant for violation of the ADA and RA.

## IV. CONCLUSION, ORDER, AND RECOMMENDATIONS

The Court has screened Plaintiff's First Amended Complaint and finds that it fails to state any cognizable claim. The Court recommends not allowing further leave to amend because Plaintiff was already given leave to amend with the relevant legal standards.

Accordingly, IT IS ORDERED that the Clerk of Court is directed to:

1. Assign a District Judge to this case; and
2. Terminate E. Martin as a defendant from the docket.

Moreover, IT IS RECOMMENDED as follows:

1. This action be dismissed, with prejudice, for failure to state a claim; and
2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits.

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 6, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE